GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MICHAEL R. WILNER (Cal. Bar No. 156592)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0687
    Facsimile: (213) 894-6269
    E-mail:    michael.wilner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                UNITED STATES DISTRICT COURT

           FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-1412-PSG |
| Plaintiff, | **GOVERNMENT'S POSITION WITH RESPECT TO PRESENTENCE REPORT AND SENTENCING FACTORS REGARDING DEFENDANT MOHAMAD ESMAIL; DECLARATIONS OF ICE SPECIAL AGENT TIMOTHY KIRKHAM** |
| v. | |
| MOHAMAD ESMAIL, | |
| Defendant. | Sentencing: February 1, 2010, at 10:00 a.m. |

\*

\*

\*

\*

\*

\*

\*

\*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Mohamad Esmail awaits sentencing for his participation in a money laundering conspiracy [18 U.S.C. § 1956(h)].  Pursuant to the terms of the parties' plea agreement and the Probation Office's recommendation, the government respectfully requests that the Court impose a low-end guideline sentence of eighteen months in custody.  The government will not object should the Court decide to impose alternatives to custody (such as electronic home detention and community service) in lieu of a portion of the prison sentence.

* * *

Defendant Esmail facilitated a mortgage fraud scheme orchestrated by members of his extended family.  Esmail deliberately routed illegal proceeds derived from three fraudulent mortgage transactions back to the main perpetrators of the operation.  While Esmail conspired to launder money on behalf of his partners, there is insufficient evidence to establish that Esmail played a culpable role in the underlying mortgage fraud committed by his brothers-in-law, co-defendants Jubran and Ata Dighlawi.  For this reason, the government concurs with the probation officer's analysis and calculation of the money laundering sentencing guidelines here.

The government respectfully requests that the Court accept the probation officer's recommendation and the parties' plea agreement, and impose a low-end sentence of eighteen months in custody on defendant.

## II. **FACTS**

The government concurs with the statement of defendant's offense in the presentence report. For the Court's convenience, the government offers a brief summary of the criminal conduct here.

In early 2006, defendant Esmail bought three houses in Yucca Valley, California. Defendant Esmail bought the homes at the request of his brother-in-law, co-defendant Jubran Dighlawi. In September and October 2006, defendant Esmail sold the three Yucca Valley homes at inflated prices. The named buyer of the homes was Yousef Mohamed.

However, in reality, co-defendants Jubran Dighlawi and Ata Dighlawi were the actual purchasers of the homes and controlled all aspects of the transactions. Defendant Esmail knew that the Diglawi brothers were purchasing the houses from him. PSR at ¶¶ 12-13, Plea Agreement at ¶¶ 9.a-b. At the time of these transactions, defendant Esmail lived and worked in Washington State, not in any of the California properties involved in the deals. PSR at ¶ 63.

When Esmail sold the three Yucca Valley houses, he received payments from escrow companies that purported to represent profits from the appreciated homes. According to the transaction documents, the three homes had sharply increased in alleged value in a short period of time, thereby generating profits for Esmail.[1]

---

[1] In a roughly 4-5 month period in 2006, the homes appeared to increase in value as follows:

The escrow company paid the proceeds of the Yucca Valley sales to Esmail's bank account. Esmail knew that the Dighlawis had obtained fraudulent mortgages from banks in the course of buying the houses from Esmail, although there is no evidence that Esmail assisted his brothers-in-law in lying to the banks in the loan process. The supposed profits paid to Esmail's Wells Fargo account were derived from those loans. PSR at ¶¶ 14-16, Plea Agreement at ¶ 9.c.

Esmail then forwarded funds from the fraudulent mortgage deals back to co-conspirator Jubran Dighlawi. Esmail did this by:

    (a)  wiring money from his bank account to the account of his sister (Jubran Dighlawi's wife); and

    (b)  withdrawing cash from his bank account and depositing the cash into bank accounts controlled by Jubran Dighlawi.

PSR at ¶¶ 16-18, Plea Agreement at 9.d. The total amount of money that the government can prove that Esmail forwarded to

---

    a.  Cherokee Trail home - increased from $170,000 to $230,000 (35% increase);
    b.  Coyote Trail home - increased from $120,000 to $180,000 (50% increase);
    c.  Yucca Trail home - increased from $189,000 to $230,000 (41% increase).

See Declaration of ICE Special Agent Tim Kirkham at ¶ 2.

During the brief period of time that Esmail owned the homes (while living in Washington), the City of Yucca Valley issued no construction or building permits for these houses. See Kirkham Declaration at ¶ 3. This strongly establishes that there was no legitimate reason for the sudden large price increase in the two sets of transactions between family members.

Dighlawi in these ways is approximately $78,000.  PSR at ¶¶ 17-18, Plea Agreement at 9.d-e.

In 2008, during the course of this mortgage fraud investigation, defendant Esmail met with federal agents.  Esmail voluntarily gave a statement to the agents that was videorecorded.  In his meeting with the agents, Esmail admitted his role in assisting his familymembers in implementing this fraud scheme.[2]

### III. THE PLEA AGREEMENT'S CALCULATION OF ADVISORY GUIDELINES AND RESPONSE TO PRESENTENCE REPORT

The government and defendant entered into a written plea agreement to resolve this case.  Defendant agreed to plead guilty to one count of money laundering conspiracy.

The parties further agreed to a sentencing guideline calculation for defendant's offense.  The parties agreed that the base offense level for defendant's crime was 8 under USSG § 2S1.1(a)(2).  Because the value of the laundered funds was over $70,000, an additional 8-level enhancement under the loss table in section 2B1.1 applies.  The parties further agreed to an additional 2-level enhancement for a conviction under 18 U.S.C. § 1956 pursuant to USSG § 2S1.1(b)(2)(B).[3]  After deducting

---

[2] The indictment in this case names both Jubran and Ata Dighlawi as co-defendants.  Jubran has not been arrested to date, and is believed to be a fugitive living outside the United States.  Ata Dighlawi awaits trial (currently scheduled for March 16, 2010).

[3] In reciting the terms of the parties' plea agreement, the presentence report inadvertently omits the agreed-upon enhancement for the conviction under Section 1956.  PSR at ¶ 3.  However, the Probation Officer correctly includes this

4

3 levels for acceptance of responsibility, the final offense level under the plea agreement is level 15.

The presentence report concurs with the parties' guideline calculation. The presentence report further found defendant to be in criminal history category I based on no criminal convictions. As a result, the government agrees with the Probation Officer that defendant's final offense level is 15 and criminal history category as I, leading to an advisory guideline range of 18-24 months.

**IV.   THE GOVERNMENT'S ANALYSIS OF THE RELEVANT SENTENCING FACTORS LISTED IN 18 U.S.C. § 3553(a)**

Consistent with the plea agreement and the government's express low-end commitment, the government respectfully recommends that the Court impose a guideline sentence of eighteen months in custody. The government will not object should the Court decide to impose alternatives to custody (such as electronic home detention and community service) in lieu of a portion of the prison sentence. See USSG § 5C1.1 and 18 U.S.C. § 3563(b) (discretionary sentencing conditions). The government previously agreed to a delayed surrender date for Mr. Esmail following sentencing due to his wife's expected childbirth this spring.

The government's proposed sentence reasonably reflects the sentencing factors contained in 18 U.S.C. § 3553(a), including an analysis of defendant's offense, his personal background, his

---

enhancement in the analysis of the guidelines offense level. PSR at ¶ 26. There is no conflict between the parties' analysis of the offense level and the presentence report's conclusion.

respect for the law, and the role of the advisory guidelines. A minimal, but considerable, custodial sentence also accurately reflects the need for deterrence and punishment of individuals who participate in financial and mortgage-related crimes such as the present offense.

Esmail played a limited, yet important, part in facilitating his in-laws' extensive mortgage fraud plot.[4] Esmail acquired the three Yucca Valley properties in early 2006 that he later sold to the Dighlawi brothers at higher prices. Defendant Esmail was not directly involved in the fraudulent loan applications submitted to federally insured lenders, nor was he the main profiteer in the scheme. Crucially, though, Esmail was aware that (a) the Dighlawis controlled the transactions (despite using the name of another person), and (b) the Dighlawis fraudulently obtained mortgages in the deals.

Esmail's key role, then, was to get the criminally obtained proceeds to his partners. Esmail routed the ill-gotten gains from his personal bank account to the Dighlawis by wiring money to an account of Jubran Dighlawi's wife and by making cash deposits into a bank account held under an alias of Jubran Dighlawi. Esmail's guilty plea to the money laundering offense accurately and fairly captures his criminal role in the scheme.

Given the rampant nature of mortgage fraud in Southern California, a custodial sentence is appropriate here to deter

---

[4] 18 U.S.C. § 3553(a)(1) (nature and circumstances of offense).

other potential offenders.[5]  Defendant Esmail apparently was roped into engaging in this offense by his in-laws, each of whom played a more forceful role in implementing the scheme.  Even so, Esmail apparently agreed to help the "family business" by laundering this money as part of the organization.  This type of offense is easily replicable.  A considerable sentence on a participant who helped conceal these illegal profits will send a strong message of punishment and deterrence to the community.

Finally, the Court should give close consideration to imposing a sentence that will protect the community from future crimes by Esmail, and that will specifically deter him from additional offenses.[6]  Both Jubran and Ata Dighlawi had previous criminal records by the time they brought Esmail into the mortgage scheme.  While those individuals are clearly recidivists, Esmail is not -- at least, not yet.  As a first offender facing a federal criminal conviction, a stern sentence may show Esmail that crime doesn't pay, and that he should not follow the negative examples of his in-laws here.[7]

---

[5] 18 U.S.C. § 3553(a)(2)(A-B) (seriousness of offense, deterrence to others, respect for rule of law).

[6] 18 U.S.C. § 3553(a)(2)(B-C) (deterrence, protection of public).

[7] The remaining 3553(a) factors do not appear to apply here.  Further, the presentence report does not note that defendant has substance abuse, drug addiction problems, mental, emotional, or psychological problems that need to be considered at sentencing.  [18 U.S.C. § 3553(a)(2)(D)].  The government believes that a non-custodial or probatiory sentence is inappropriate given the nature, circumstances, and seriousness of the crimes here, although the government will not object to a portion of the sentence including alternatives to custody.

**V. <u>CONCLUSION</u>**

For the foregoing reasons, and based on the parties' plea agreement and the Probation Officer's recommendation, the government respectfully requests that the Court sentence defendant to a low-end sentence of eighteen months in custody.

Dated: January 14, 2010   Respectfully submitted,

            GEORGE S. CARDONA
            Acting United States Attorney

            CHRISTINE C. EWELL
            Assistant U.S. Attorney
            Chief, Criminal Division

              /s/
            _____
            MICHAEL R. WILNER
            Assistant United States Attorney
            Deputy Chief, Major Frauds Section

             Attorneys for Plaintiff
             UNITED STATES OF AMERICA

---

[18 U.S.C. § 3553(a)(3-4)]. Finally, because no other parties have been sentenced yet in this case, there are no sentencing disparity issues before the Court. [18 U.S.C. § 3553(a)(6)].

**DECLARATION OF TIMOTHY KIRKHAM**

I, TIMOTHY KIRKHAM, do hereby declare as follows:

I have personal knowledge of the following facts and, if called upon as a witness, I could and would competently testify to these facts.

1. I am a Special Agent with U.S. Immigration and Customs Enforcement. I am one of the investigative case agents in this matter.

2. In the course of this investigation, I reviewed numerous real estate contracts involving three homes located in Yucca Valley, California, as charged in the indictment. These homes appeared to have been purchased by defendant Esmail in the spring of 2006, and sold later that year at higher prices to "Yousef Mohamed." Based on my review of those contracts, I determined that during a roughly 4-5 month period in 2006, the homes appeared to increase in value as follows:

    a. Cherokee Trail home - increased from $170,000 to $230,000 (35% increase);

    b. Coyote Trail home - increased from $120,000 to $180,000 (50% increase);

    c. Yucca Trail home - increased from $189,000 to $230,000 (41% increase).

3. As part of my investigation, I contacted the Building Department of the City of Yucca Valley regarding these three properties. According to the city employees in that office, there were no construction or building permits issued during 2006 for the homes.

1     I declare under penalty of perjury, under the laws of the
2 United States of America, that the foregoing is true and correct.
3     Executed on January 13, 2010, in Long Beach, California.

    /s/
    TIMOTHY KIRKHAM

10